UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA DAVIS-JACKSON, ) ) Plaintiff, ) ) vs. ) ) JEFF FREDERICI and DIANA RITTER, ) ) Defendants. ) | Case No. 4:06CV1227SNL |

## MEMORANDUM

*Pro se* plaintiff has filed this Fair Housing Act (42 U.S.C. §3601 *et. seq.*) violation case alleging that her apartment lease was unlawfully terminated by the defendants on the basis of race. This matter is before the Court on the defendants' motion for summary judgment (#23), filed September 17, 2007. As of today's date, plaintiff has failed to file a response. This cause of action is set for jury trial on January 7, 2008.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts

showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), *citing* Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." Howard, at 800 *quoting* Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999). Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations. Howard, at 800-01 (citations omitted). The Court is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions in fact.". Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003).

Since the plaintiff has not responded to the summary judgment motion, including the defendants' statement of uncontroverted material facts, the Court will simply summarize the material facts and refer to submitted exhibits as needed.

In April/May 2005, Plaintiff became a resident; i.e. apartment tenant, at an apartment complex in St. Louis County, Missouri known as Village Square Apartments ("Village Square"). Village Square is operated by Buccaneer Properties. Defendant Frederici is a Vice-President of Buccaneer Properties. Defendant Ritter is the property manager at Village Square.

Almost immediately, plaintiff began to clash with her neighbor, Darlene Higginbotham, who is hearing-impaired, and occupied the apartment adjacent to the plaintiff. Over the period of approximately six (6) months, plaintiff made numerous accusations against Ms. Higginbotham and her daughter, including but not limited to, loud music/noise at night; running up and down stairs outside of the apartments; slamming doors; unhooking the plaintiff's cable; tampering with the plaintiff's mail; smearing mud on plaintiff's friend's car; and placing animal feces in plaintiff's "side" of the basement storage area. Plaintiff never witnessed Ms. Higginbotham committing any of these acts. Plaintiff contacted the police on multiple occasions to complain about the incidents

3

she believed attributable to Ms. Higginbotham, but the police were unable to confirm any involvement in the alleged incidents by Ms. Higginbotham.

On or about September 21, 2005 plaintiff returned home in the evening and noticed her back door ajar. The next day, plaintiff called defendant Ritter, accusing Ms. Higginbotham and a Village Square maintenance man of going into her apartment while plaintiff was at work. No one at the complex had ever witnessed Ms. Higginbotham and/or the accused maintenance worker entering the plaintiff's apartment while plaintiff was at work. Ritter told plaintiff she was not aware of anyone having entered the plaintiff's apartment without her permission, and that she (Ritter) had not authorized any maintenance worker to be in plaintiff's apartment that day. After her conversation with Ritter about the entry into her apartment, plaintiff noticed that letters from her incarcerated husband were no longer in their usual storage place. Plaintiff believed that Ms. Higginbotham and the maintenance worker had entered her apartment, found the letters, read the letters, and put them back in the wrong place in the apartment.

Plaintiff confronted defendant Ritter in the Village Square management office and angrily yelled at her: "You all are a bunch of snakes, you all go in people **[sic]** apartments when we're not here . . ." Plaintiff's Deposition, pgs. 34-36; Ritter Declaration, ¶8. Ritter attempted to calm the plaintiff but she continued with her tirade until finally Ritter asked her to leave her office. Despite Ritter's denials that anyone had entered plaintiff's apartment, plaintiff continued to scream at Ritter as she left Ritter's office; yelling that "they [are] snakes and they go in your apartment when you're not at home." Plaintiff's Deposition, pg. 35; Ritter Declaration, ¶8. Following this incident, Ritter became concerned for her safety as well as the safety of the other tenants of Village Square.

Shortly thereafter, plaintiff saw Higginbotham conversing with John Barfield, the postal worker who delivered mail to the apartment complex. Plaintiff believed that Barfield had told Higginbotham about the letters from plaintiff's husband. Plaintiff confronted Barfield (as he was talking to Higginbotham) and angrily stated "Your job was putting my mail in the box, your job was not to be knowing what my business is in my mailbox. The only person that knows what I get in my mail is you and you need to find you some business and stay out of mine's . . .".

Plaintiff's Deposition, pgs. 57-59. Barfield denied plaintiff's accusations and threatened to report her to his supervisor; to which plaintiff replied "You tell your momma and your little baby sister, I really don't care, but your job is not to be knowing what my business . . .". Plaintiff's Deposition, pg. 58.

Barfield complained to his supervisor that plaintiff was harassing, yelling, and cursing at him. Barfield's supervisor called Ritter about plaintiff's abusive behavior towards Barfield and demanded that something be done about it; otherwise, the postal supervisor said Barfield would not deliver mail to the apartment complex.

On October 3, 2005 plaintiff hand-delivered a letter to defendant Frederici at the Buccaneer offices on Manchester Rd. in St. Louis. Prior to her coming to his office, Frederici had never met the plaintiff and was unaware of any problems she was having with Higginbotham. In this letter, plaintiff complained about an unidentified neighbor and the overall management of the apartment complex. She orally told Frederici of the alleged incidents of harassment by Higginbotham. Both in the letter and orally she demanded that her lease be terminated and all rent refunded to her. Frederici attempted to discuss other options with her such as moving into a difference apartment in the Village Square complex, or moving to another complex (also managed by Buccaneer) altogether but plaintiff rejected same. Frederici Declaration, ¶6. Although no resolution was reached at that time, plaintiff left the meeting with Frederici considering him to be a "nice man" and that they had a "nice talk". Plaintiff's Deposition, pg. 91.

Following his meeting with plaintiff, Frederici contacted Ritter. Ritter told Frederici of the September 22nd confrontation with plaintiff, and the call from the postal supervisor regarding plaintiff's abusive behavior towards the complex' mail delivery man (Barfield). Frederici Declaration, ¶¶6-7; Ritter Declaration, ¶10. Frederici shared Ritter's concerns about the safety and well-being of the management staff and the tenants of Village Square.

A few days after meeting with Frederici, plaintiff's porch light stopped working. After the plaintiff replaced the bulb and checked the circuit, the porch light still failed to work properly. Plaintiff believed that Higginbotham had tampered with her porch light although she had never seen Higginbotham do anything to the light. Plaintiff's Deposition, pgs. 145-47.

5

On or about October 7, 2005 plaintiff left an angry voicemail message for Frederici threatening to file a personal injury lawsuit if she fell because her porch light was inoperative.[1] Plaintiff stated that "I am tired of her [Ms. Higginbotham] . . . Not only is she messing with that [porch light], she's steady going down the business flipping my stuff back and forth and I am tired of her, I am tired of Miss Higginbotham . . I am tired of her and you need to talk to her . . . and if I fall out there in that parking lot because I can't see then I will not be renting from you, I will own one of these apartments." Plaintiff's Deposition, pgs. 91-94; Frederici Declaration, ¶8.

After receiving this voicemail message, Frederici was more concerned about plaintiff's behavior and the safety of his management staff and the tenants of the complex. He decided to terminate plaintiff's lease. On October 10, 2005 he left plaintiff a voicemail message informing her he was terminating her lease immediately because of her abusive and threatening behavior. Plaintiff's Deposition, pgs. 94-95; Frederici Declaration,¶¶10-11.

On or about October 13, 2005 the Hazelwood Police Department came to the Village Square on-site manager's office and informed Ritter that plaintiff had called them to report that Higginbotham had allegedly disconnected plaintiff's cable connection in the basement of the apartment building. There was no evidence of Higginbotham disconnecting plaintiff's cable. Ritter Declaration, ¶12.

On or about October 28, 2005 Ritter sent plaintiff a Notice to Terminate Tenancy, in accordance with Paragraph 18 of plaintiff's lease. The Notice gave plaintiff until December 1, 2005 to vacate her apartment. Plaintiff refused to vacate by the December deadline. Plaintiff's Deposition, pgs. 94-96, 119-20; Plaintiff's Deposition Exhibits P3, P5; Ritter Declaration, ¶¶13-14.

On January 16, 2006 Ritter sent plaintiff a Second Notice demanding that plaintiff vacate her apartment by February 15, 2006. Plaintiff did not vacate her apartment until March 25, 2006. Plaintiff's Deposition, pg. 122; Plaintiff's Deposition Exhibit P6; Ritter Declaration, ¶¶14-15.

---

[1]Evidently, plaintiff has not told Ritter of her problems with the porch light. She believed defendant Ritter to either be a close friend or a relative of Higginbotham although she had no facts to support this belief. Plaintiff's Deposition, pgs. 143, 145.

Plaintiff filed a housing complaint alleging that Village Square discriminated against her on the basis of race. On February 21, 2006 the Missouri Commission on Human Rights (MCHR) issued a determination of "No Probable Cause". Defendants' Exhibit E. On August 15, 2006 plaintiff filed the instant complaint.

The Court has reviewed the legal memorandum, declarations and exhibits submitted by the defendants in support of their motion for summary judgment. The defendants have met their initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467 (1962). Once the defendants have met their burden, the burden shifted to the plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those] issue[s]." City of Mt. Pleasant v. Associated Electric Coop., 838 F.2d. 268, 274 (8th Cir. 1988). Since the plaintiff has failed to oppose the defendants' motion, the Court accepts the defendants' account of the facts and now will apply the relevant law.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §3604(b).

To prevail under a FHA discrimination claim, a plaintiff must prove discriminatory intent. *See*, Dirden v. Department of Housing and Urban Development, 86 F.3d. 112, 114 (8th Cir. 1996); Barnes v. Yorkshire Townhomes/ERC Properties, 2005 WL 3784926 (W.D.Ark. 2005)[2]. A race discrimination claim brought under the FHA is analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Mitchell v. Shane, 350 F.3d. 39, 47 (2nd. Cir. 2003); Hodges v. Cottage Hill Apartments, 2007 WL 120586 (W.D.Mo. 2007); Sandy Hill Apartments v. Kossiwa Kudawoo, 2006 WL 2974305 (D.Minn. 2006); Barnes, *supra*. Under the McDonnell Douglas framework, a plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. Mitchell, at 47; Hodges,

---

[2]On occasion the Court will cite to an unpublished opinion that it believes provides relevant analysis to the issue at hand.

*supra.*; Barnes, *supra.* If such a *prima facie* case of discrimination is made, the burden shifts to the defendant to rebut the *prima facie* showing by articulating a legitimate, nondiscriminatory reason for the action taken. Id. Finally, if such a reason is articulated, the burden returns to the plaintiff to demonstrate that the defendant's legitimate reason is merely a pretext for discrimination. Id.

A *prima facie* case of disparate treatment under 42 U.S.C. §3604 requires a showing that 1) the plaintiff is a member of a statutorily protected class; and 2) the plaintiff was not offered the same terms, conditions or privileges of rental of a dwelling or was not provided with the same services or facilities in connection with the rental of said dwelling that were made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination. Hodges, *supra.*

In the instant case, defendants assert that plaintiff has failed to adequately demonstrate a *prima facie* case of race discrimination under the FHA because she has not set forth any affirmative evidence that she was treated differently from other tenants (presumably white tenants) at Village Square who engaged in the same conduct; i.e., accusing another tenant of trespassing and various acts of vandalism; screaming at the postal delivery man; screaming at the on-site apartment manager, involving the police in unsubstantiated accusations of vandalism by another tenant; and leaving a threatening voicemail on the apartment complex' management company's phone. The Court concurs that by failing to respond to the summary judgment motion, plaintiff has failed to dispute in any way the fact that no other tenant, white or otherwise, engaged in the same behavior and was treated differently. Even viewing the facts in the light most favorable to plaintiff, there is simply nothing before the Court from which any reasonable juror could infer malice or a discriminatory animus by either of the defendants (towards the plaintiff).

Furthermore, even the plaintiff herself failed to testify that race was a motivating factor in the defendants' actions. She testified that Ritter failed to take any recourse against Higginbotham because plaintiff (without any evidence to support) believed they were "friends or relatives". Plaintiff's Deposition, pgs. 143, 145. She further testified that the reason Frederici terminated her lease was due to the threatening voicemail she left for him. Plaintiff's Deposition, pgs. 91-93.

8

Plaintiff has failed to make a sufficient *prima facie* case of race discrimination under the FHA and since no material issues of fact exist, defendants are entitled to summary judgment as a matter of law.

Dated this   19th   day of October, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE